IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Marlboro Electric Cooperative, Inc., | ) | Case No.: 4:23-cv-01513-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Mohawk Industries, Inc. and Aladdin Manufacturing Corporation, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a breach of contract case in which Plaintiff Marlboro Electric Cooperative, Inc. ("Plaintiff" or "Marlboro") has filed a Motion for Protective Order (DE 38) and a Motion to Compel (DE 42). Defendants Mohawk Industries, Inc., and Aladdin Manufacturing Corporation ("Defendants") have responded in opposition to Plaintiff's motions (DE 44, 54), and Plaintiff has replied (DE 48, 59).

For the reasons below, the Court grants Plaintiff's Motion for Protective Order and grants in part and denies in part Plaintiff's Motion to Compel.

## I.     BACKGROUND

This matter arises out of a contract dispute concerning the term and enforcement of an electric service agreement related to Defendants' textile manufacturing facility in Bennettsville, South Carolina. (DE 1-1, ¶¶ 6–12.) Plaintiff contends the agreement remains in effect until March 1, 2026, whereas Defendants maintain it expired on December 31, 2020. (DE 1-1, ¶ 31.) Following Defendants' issuance of a Notice of Termination dated August 3, 2022, and cessation of operations

1

at the facility, Plaintiff initiated this action on February 10, 2023, asserting claims for declaratory judgment, breach of contract, and quantum meruit/unjust enrichment. (DE 1-1, ¶ 28; *see also* DE 1-1 at 9–11.)

In the course of discovery, Defendants noticed the deposition of Plaintiff's in-house counsel, Paul Conway ("Mr. Conway"). Mr. Conway also previously served as outside counsel to Plaintiff and to Central Electric Power Cooperative, Inc. ("Central"), which supplies Plaintiff with wholesale power. (DE 46 at 2–3.) Plaintiff raised concerns regarding privilege and work product protections but agreed to allow the deposition to proceed, reserving the right to seek judicial intervention regarding any disputed objections post-deposition. (DE 46 at 3.) The deposition took place on February 6, 2025, and, due to the unavailability of the transcript within the seven-day period required by Local Civil Rule 30.04, Plaintiff timely filed a placeholder Motion for Protective Order on February 12, 2025, to preserve its objections. (DE 38; DE 46 at 4.)

Plaintiff subsequently filed its Memorandum of Law in Support of Motion for Protective Order, identifying specific segments of the deposition transcript in which Defendants' counsel allegedly sought privileged information, including legal interpretations of contract provisions, communications with Plaintiff's corporate officers and third parties, and reasoning underlying contract language. (DE 46 at 9–23.) Plaintiff asserted that such questions implicated the attorney-client privilege and both fact and opinion work product protections. Plaintiff further contended that many of the disputed lines of questioning were either resolved through non-privileged

answers or were cumulative of testimony already elicited from Plaintiff's Rule 30(b)(6) designee, CEO William Fleming. (DE 46 at 9–10, 11, 22–23.)

In addition, Plaintiff emphasized that Defendants had ample opportunity to obtain the factual information sought through less intrusive means, including through the deposition of third parties such as Central or Santee Cooper. (DE 46 at 13–14, 24–25.) Plaintiff argued that compelling further testimony from Mr. Conway would violate well-established protections afforded to litigation counsel and risk encroaching upon legal strategy and mental impressions. (DE 46 at 6–8, 23–26.) Following a meet-and-confer on March 3, 2025, Defendants declined to withdraw any of the disputed questions or acknowledge which objections had been rendered moot by Mr. Conway's answers. Instead, Defendants insisted that each contested objection be submitted to the Court for resolution. (DE 46-2 at 1.)

Additionally, Plaintiff served a Second Set of Requests for Production, including Requests Nos. 3–5 and 8–10, seeking documents related to the facility closure and to certain financial incentives that Plaintiff contends may reveal bias or credibility issues concerning Defendants' witnesses. Plaintiff contends that Defendants initially objected to the requests and refused to produce any responsive documents. Following a discovery conference with the Court, Defendants agreed to produce a single PowerPoint presentation, which Plaintiff argues is insufficient.

Plaintiff now seeks an order compelling Defendants to fully and sufficiently respond to the stated requests. Defendants oppose the motion, asserting that they

3

have complied with their discovery obligations and that the requested information is either irrelevant, burdensome, or has already been addressed.

## II.     LEGAL STANDARD

### A.     Protective Orders

Rule 26 of the Federal Rules of Civil Procedure governs the scope and limitations of discovery. Rule 26(b)(2)(C) provides, in pertinent part, that:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Additionally, Rule 26(c)(1) authorizes the court, for good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Rule 26(c)(1) Fed. R. Civ. P. The rule enumerates various protective measures the court may impose, including forbidding discovery altogether, specifying terms for discovery, or limiting the scope or method of discovery. *See* Rule 26(c)(1)(A)-(H) Fed. R. Civ. P.

The court possesses broad discretion to control the discovery process and to determine whether a protective order is warranted. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999) ("The Rule confers broad discretion on the trial court to decide when a

protective order is appropriate and what degree of protection is required."). To obtain a protective order under Rule 26(c), the moving party bears the burden of demonstrating good cause. *See* Rule 26(c) Fed. R. Civ. P. This standard requires more than conclusory assertions; courts have consistently held that the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," to establish good cause. § 2035 Procedure for Obtaining Protective Orders, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.). The determination of good cause is a factual inquiry, requiring the court to balance the interests and hardships involved in light of the nature of the information sought. *Id*.

**B.     Motion to Compel**

"Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphases added). Of course, courts must balance "fairness in the disposition of civil litigation" through "knowledge of the relevant facts" via discovery while ensuring "effective assistance of lawyers, fostered by privacy in communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992). Thus, information implicating the second policy requires the discovering party to "show[] that it has [a] substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3) Fed. R. Civ. P.

Rule 37(a)(3), Fed. R. Civ. P., provides that "[a] party seeking discovery may move for an order compelling . . . production[] . . . if: [] a party fails to produce documents . . . []as requested under Rule 34[,] [Fed. R. Civ. P.]. Of course, "[a] motion to compel discovery is addressed to the sound discretion of the district court." *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986).

### III.    DISCUSSION

**A.    Plaintiff's Motion for Protective Order**

Plaintiff moves for a protective order precluding further inquiry into privileged matters raised during the deposition of its in-house counsel, Mr. Conway. (DE 38.) Mr. Conway serves not only as Plaintiff's in-house attorney, but also as an active member of its litigation team and previously acted as outside counsel to Plaintiff and Central, the wholesale power supplier implicated by agreements underlying this dispute. (DE 46 at 2–3.) Although the parties agreed to permit Mr. Conway's deposition, Defendants' questioning extended into areas that either directly sought, or carried a substantial risk of revealing, attorney-client communications and attorney work product, including opinion work product.

Upon review of the record, the Court finds that Plaintiff's objections during the deposition were well-founded under both the attorney-client privilege and the work product doctrine. Specifically, Defendants' counsel posed questions to Mr. Conway concerning his interpretations of contractual language, his assessments of the veracity of client deposition testimony, and the legal reasoning behind drafting choices made in contracts negotiated years prior. (DE 46 at 9–23.) While Mr. Conway provided non-privileged responses, where appropriate—thereby mooting certain

6

objections—Plaintiff's counsel properly instructed Mr. Conway not to answer questions that sought disclosure of confidential communications, mental impressions, or legal strategy.[1]

Moreover, under Rule 26(b)(2)(C), the Court must limit discovery where the information sought is unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive. Here, Defendants have not demonstrated that the information they sought from Mr. Conway is otherwise unavailable. Plaintiff has already produced its designated corporate representative for a Rule 30(b)(6) deposition, and Defendants remain free to depose representatives of Central or other third parties involved in the relevant contract negotiations. (DE 46 at 11, 13–14, 24–25.) The existence of these alternative sources undermines any contention that continued inquiry into Plaintiff's in-house counsel is necessary or irreplaceable.

Additionally, Rule 26(c)(1) empowers the Court, for good cause shown, to issue protective orders to shield parties from undue burden or expense. The burden rests

---

[1]     By way of example, the following exchange occurred at Mr. Conway's deposition, during which Plaintiff's counsel objected and directed Mr. Conway not to answer to the extent doing so would reveal privileged information.

> [Defense counsel] Q. Okay. December 31, 2020 is also the termination date specified in Section 6 of the restated agreement; correct?
>
> [Mr. Conway:] A. They're the same dates, yes.
>
> [Defense Counsel:] Q. Okay. And was that intentional?
>
> [Counsel for Mr. Conway]: Objection, privileged. Unless Mr. Conway can answer without divulging any privileged information, I will instruct him not to answer.

(DE 46-1 at 43:12-43:20.)

with the moving party to establish good cause through a particularized showing of fact. *See* Fed. R. Civ. P. 26(c); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2035 (3d ed.). Here, Plaintiff has satisfied this standard. The record establishes that further probing into Mr. Conway's legal analyses and strategic considerations would reveal protected mental impressions and risk disrupting the adversarial process that Rule 26(c) is designed to safeguard. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Defendants' argument that Plaintiff waived its privilege objections by permitting the deposition to proceed is likewise unavailing. The record makes clear that Plaintiff consented to Mr. Conway's deposition with a reservation of rights, explicitly preserving its ability to raise privilege objections for judicial resolution. (DE 46 at 2–3.) Moreover, the parties engaged in prompt meet-and-confer efforts following the deposition, and Plaintiff timely sought court intervention. (DE 46-2 at 1.) Under these circumstances, there is no basis to conclude that Plaintiff waived its objections by failing to leave the deposition formally "open."

Finally, although the standard articulated in *Weckesser v. Knight Enters.*, 392 F. Supp. 3d 631 (D.S.C. 2019), primarily addresses restrictions on communications in the context of class or collective actions, its reasoning is instructive. Courts have repeatedly recognized that permitting inquiries into the mental impressions and legal strategies of counsel risks undermining the proper functioning of the adversarial process and imposes precisely the type of burden and disruption that Rule 26(c) seeks to prevent.

Accordingly, the Court concludes that good cause exists to issue a protective order. Plaintiff's motion is therefore granted to the extent it seeks to preclude further deposition questioning of Mr. Conway into the categories of testimony identified in its briefing and to uphold the privilege assertions made during his deposition.

**B.     Plaintiff's Motion to Compel**

Plaintiff moves to compel Defendants to fully respond to Request Nos. 3–5 and 8–10 of its Second Set of Requests for Production. (DE 42.) These requests seek information related to the closure of Defendants' facility and to certain financial records which Plaintiff asserts may reveal economic motives underlying Defendants' interpretation of the contract. (DE 42-1; DE 48 at 1–4.)

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance, while broadly construed at the discovery stage, must nevertheless be tethered to the specific claims and defenses asserted. *See* Rule 26(b)(1) Fed. R. Civ. P. The Rule further requires the Court to consider the proportionality of the discovery sought, evaluating "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." *Id*. Rule 37(a)(3)(B)(iv), Fed. R. Civ. P., permits a party to move to compel production when the opposing party "fails to produce documents . . . as requested under Rule 34." Ultimately, the decision to grant

9

or deny a motion to compel rests within the sound discretion of the district court. *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986).

At the same time, courts must balance the objective of full disclosure of relevant facts with the protection of legitimate legal strategy and privileged materials. As the Fourth Circuit has noted, mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation, but this must be tempered by the "effective assistance of lawyers, fostered by privacy in communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client." *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992). Where discovery implicates work product protections, the requesting party must demonstrate a "substantial need for the materials" and show that it "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

**A. Requests Concerning Facility Closure (Requests Nos. 3–5)**

Requests Nos. 3–5 seek documents and communications related to the date Defendants ceased production at the Facility, their decision to cease operations, and the number of individuals employed at the Facility. (DE 42-2 at 6–8.) Plaintiff contends that this information is relevant to show potential bias on the part of Defendants—namely, whether economic or operational incentives influenced their position that the contract terminated in 2020 rather than 2026. (DE 48 at 2–3.) Plaintiff further notes that if the Court finds ambiguity in the contract, extrinsic evidence regarding the parties' intent becomes admissible and, therefore,

discoverable. *See ESA Servs., LLC v. S.C. Dep't of Revenue*, 392 S.C. 11, 20, 707 S.E.2d 431, 436 (Ct. App. 2011).

Defendants argue that their reasons for closing the Facility are irrelevant in a breach of contract case that turns solely on the written terms of the agreement. (DE 44 at 6–7 (citing *Lowery v. Metro. Life Ins. Co.*, 2020 WL 10758551, at *6 (D.S.C. Dec. 23, 2020)).) They further assert that responding to these requests would impose undue burden, particularly given the temporal scope and breadth of the requested categories. (*Id.* at 7–8.)

The Court finds that these requests fall within the permissible bounds of Rule 26(b)(1). Where Defendants themselves acknowledge that the dispute concerns contract interpretation and the parties' intent (DE 11-1 at 7–8; DE 44 at 2), Plaintiff is entitled to explore whether Defendants' interpretation was influenced by internal business considerations. Bias, whether corporate or individual, is a proper subject of inquiry for impeachment purposes. *See United States v. Abel*, 469 U.S. 45, 52 (1984); *Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F. App'x 136, 144 (4th Cir. 2019).

However, the Court agrees that Request No. 5 is overbroad. As drafted, it seeks "any and all documents and communications" reflecting the number of employees, agents, or representatives at the Facility, and would encompass irrelevant operational data. (DE 42-2 at 7–8.) Although Plaintiff agreed to limit the temporal scope to post-2018 documents (DE 48 at 2), the breadth remains disproportionate. The Court will, therefore, grant the motion as to Requests Nos. 3 and 4, and will direct the parties to confer and revise Request No. 5 to limit its scope to data directly

11

reflecting the Facility's operational status during the final years of service under the Agreement.

**B. Requests Concerning Financial Information (Requests Nos. 8–10)**

Requests Nos. 8–10 seek Defendants' financial projections, records, and profitability data associated with the Facility. (DE 42-2 at 8–10.) Plaintiff argues that this information is relevant to corporate bias and to show that Defendants stood to benefit from their contractual interpretation. (DE 48 at 2–3.) Plaintiff also asserts that if extrinsic evidence is necessary to resolve ambiguity, these records may be probative of intent. (*Id.* at 3–4.)

Defendants respond that these requests are duplicative of earlier requests not timely moved on and that they impose an undue burden because they require review of voluminous and sensitive financial information. (DE 44 at 9–11.) They further argue that Plaintiff is not seeking individual witness compensation data but general corporate financials, which are not relevant to credibility or bias. (*Id.* at 9.)

While the Court is not persuaded that the burden of production alone justifies withholding all financial records—particularly in light of Rule 26(b)(1)'s broad relevance standard—the burden must be assessed in context. The record reflects that Defendants have already produced PowerPoint materials summarizing the economic rationale for closing the Facility (DE 44-1 at 1–2), which address the core of Plaintiff's stated concern. To the extent Plaintiff seeks more granular financial records, the Court finds that such materials may implicate work product concerns, business confidentiality, and significant burden.

12

Under Rule 26(b)(3), Plaintiff must demonstrate a substantial need for any such protected material and an inability to obtain the equivalent through less burdensome means. At this stage, Plaintiff has not met that threshold. The Court will, therefore, deny the motion as to Requests Nos. 8–10, without prejudice to Plaintiff renewing its request with a more narrowly tailored showing of relevance and necessity. The parties are directed to continue good-faith discussions concerning the scope of any additional disclosures in light of Defendants' prior productions and the issues raised herein.

### IV.  CONCLUSION

For these reasons, it is hereby ORDERED as follows:

1. Plaintiff's Motion for Protective Order (DE 38) is GRANTED. Defendants are precluded from further deposition questioning of Plaintiff's in-house counsel, Paul Conway, concerning the categories of testimony identified in Plaintiff's motion and supporting briefing, including inquiries into legal strategy, attorney-client communications, and Mr. Conway's mental impressions or analyses relating to the agreements at issue.

2. Plaintiff's Motion to Compel (DE 42) is GRANTED IN PART and DENIED IN PART. Specifically:

   i. The motion is GRANTED as to Request Nos. 3 and 4 of Plaintiff's Second Set of Requests for Production. Defendants shall produce responsive, nonprivileged documents within twenty-one (21) days of the date of this Order.

    ii. As to Request No. 5, the motion is GRANTED to the extent the parties are directed to confer in good faith to revise the scope of this request, limiting it to documents directly reflecting the Facility's operational status during the final years under the Agreement, with an appropriate temporal and subject-matter limitation. Any such agreed supplemental production shall be completed within thirty (30) days of this Order.

    iii. The motion is DENIED WITHOUT PREJUDICE as to Request Nos. 8–10. Plaintiff may renew its motion upon a more particularized showing of substantial need and inability to obtain the information by other means, consistent with Rule 26(b)(3).

3. The parties are further directed to continue their meet-and-confer efforts in good faith to resolve any remaining disputes regarding the scope or timing of supplemental productions consistent with this Order.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

July 7, 2025
Florence, South Carolina